AMERICAN BRICK AND TILE COMPANY, OWNER, ET AL., PLAINTIFFS IN ERROR, v. FRANK F. DRINKHOUSE, DEFENDANT IN ERROR.

1. Under the circumstances of this case, it was for the jury to decide whether the machine, for the alteration of which a mechanics' lien was claimed, was owned by the alleged owner when the alteration was made, and was then a fixture for manufacturing purposes within the purview of the Mechanics' Lien law.
2. If the owner employs A to alter a building, and A employs B to do the work, the owner's written consent is not necessary to entitle B to a lien.
3. If a creditor accepts from his debtor the note of a third person for the pre-existing debt, the original debtor is not thereby discharged when such discharge was not intended by the parties.
4. Under our statute a lien claim may be amended in any particulars which do not enlarge the claim, either in the amount of the debt, in the estate to be charged or in the persons to be affected, even though

the time for filing a new claim has expired, provided judgment has not been entered on the claim.

5. If the bill of particulars annexed to a lien claim is so defective that it would not warrant a judgment to enforce the lien, but does not contain any willful or fraudulent misstatement of the matters directed by the act to be inserted therein, it may be amended and made perfect under the statute.

6. The proper extent of the curtilage to which a mechanics' lien may attach is a matter to be determined by a justice of the Supreme Court, whose decision cannot be reviewed in this court, unless erroneous in point of law.

On error to the Warren Circuit Court. For opinion in this case on case certified, see 29 *Vroom* 432.

For the plaintiffs in error, *George M. Shipman* and *Gilbert Collins.*

For the defendant in error, *Bartlett C. Frost* and *William H. Morrow.*

The opinion of the court was delivered by

DIXON, J. This is an action brought under the Mechanics' Lien law against the Gregg Manufacturing Company as builder and the American Brick and Tile Company as owner, for work done and materials furnished in altering a brickmaking machine.

The first question to be considered is whether the claim in suit was one for which a lien might attach. This is denied by the brick company, on the ground that it was not the owner of the machine when the alteration was made and the machine was not a fixture.

The machine stood in the works of the brick company, upon a foundation of brick and mortar six feet square and five feet deep in the ground, built by the company specially for this machine, and to which the machine was fastened by four anchor-bolts running through the foundation from the bottom to the top. The alteration consisted in tearing down all the old parts except the moulding-table and bed-plate and rebuilding the machine with some new parts much heavier

than the old. The machine was in possession of the brick company under these circumstances: The Gregg company had contracted to furnish to the brick company two machines for $6,000. It had furnished one machine according to the contract, and had delivered the machine now in controversy to be used until the second machine could be furnished. Afterwards an arrangement was made between these companies that instead of furnishing another machine the Gregg company would alter this machine to its present condition, and that the brick company would pay therefor $500 in addition to the $6,000. The Gregg company employed the plaintiff to make the alteration. These bargains seem to have been all oral.

Manifestly it was for the jury to determine from these facts whether the parties had intended that the title to the machine should pass to the brick company before the alteration, subject to the obligation of the Gregg company to make the alteration, and whether the machine had thus become a permanent addition to the freehold, so as to be a fixture for manufacturing purposes within the meaning of our lien law. These questions were properly submitted to the jury and answered by them in the affirmative.

The machine must therefore be considered as a building, according to section 5 of the statute, and the debt due to a sub-contractor for work and materials in altering it, under a contract made by the owner and not filed, became a lien upon the estate of the owner, the brick company, according to the supplement of February 8th, 1883, without the owner's written consent. *Gen. Stat., pp.* 2064, 2072, 2073.

The next question is whether, by receiving for the amount of this debt a note signed by the president of the debtor, the Gregg company, and endorsed by the company, the plaintiff discharged the original debt.

In *Swain* v. *Frazier*, 8 *Stew. Eq.* 326, this court adjudged that the acceptance of the debtor's note for a pre-existing debt would not discharge the original debt unless the creditor agreed that such should be its effect. An extension of the

same doctrine to the acceptance of the notes of third persons is sanctioned by the weight of authority, although it is modified in some jurisdictions by a rule that the acceptance of such notes raises a presumption of fact in favor of the discharge of the prior debt. *Ely* v. *James,* 123 *Mass.* 36 ; *Brigham* v. *Lally,* 130 *Id.* 485 ; *Kilpatrick* v. *Home Building and Loan Association,* 119 *Pa. St.* 30 ; *James* v. *Hackley,* 16 *Johns.* 273 ; *Noel* v. *Murray,* 13 *N. Y.* 167 ; *Youngs* v. *Stahelin,* 34 *Id.* 258 ; *National Bank of Newburgh* v. *Bigler,* 83 *Id.* 52 ; *Freeholders* v. *Thomas,* 5 *C. E. Gr.* 39 ; 2 *Am. Lead. Cas.* 263 ; 1 *Sm. Lead. Cas.* 564 (*451).

At the trial below there was no evidence tending to prove a purpose to discharge the original debt. On the contrary, the facts that the note was endorsed by the debtor and that the original debt was secured by the lien now claimed, favored the inference that the creditor intended to preserve the first indebtedness. The jury found that such was his intention.

We come now to the contention respecting the enforcement of the lien.

It appears that when the lien claim was filed, September 29th, 1891, the annexed bill of particulars did not properly set forth the dates of the various items of work and materials for which the lien was claimed, stating only that they were performed and furnished between September 29th, 1890, and November 24th, 1891. Subsequently, two of the justices of the Supreme Court made orders, one on April 24th, 1894, and the other on May 1st, 1895, permitting the claim to be amended by substituting a bill of particulars giving the precise dates with the requisite verification. On the trial this amended claim was received as valid, notwithstanding the defendant's objection that such a change could not legally be made after the expiration of the time limited by law for filing an original claim, *i. e.,* one year after the labor was performed and the materials were furnished ; and this is the objection now urged.

The following is the section authorizing amendments :

"14. At any time before judgment on a lien claim, a justice of the Supreme Court, on the application of the claimant of such lien, and on reasonable notice to all parties interested, may order such lien claim to be amended, in matter of substance as well as in matter of form, whenever it shall appear to him that such amendment can be justly made."

It should be noticed that the order thus provided for is not one to be made in the suit upon the lien claim, and therefore in that suit is open to collateral attack only. Still it may be there assailed, as these orders now are, on the ground that the subject-matter of the order was not within the power of the justice when the order was made.

In arguing this point counsel referred us to many cases where it was held that amendments should not be allowed to enlarge a claim or to bring in new claims or new parties, after the statute of limitations had become a bar. Such cases are not pertinent to the pending inquiry. Nor do the decisions of courts upon other statutes, with regard to amendments less innovating than those above mentioned, afford us much aid. Mechanics' liens on real estate are mere legislative creatures, and when they shall arise, how they shall be dealt with and when they shall perish, can be determined only on examination of the statutes.

Bearing in mind the primary rule of statutory construction, to give effect to all the words of the act when they are not contradictory and will not lead to great inconvenience or injustice, we think the solution of the question now in hand is not difficult. The amendments allowed did not enlarge the claim either in the amount of the debt, in the estate to be charged, or in the persons to be affected; they were not even necessary to apprise the parties of the exact demand set up. They simply added the detail of dates to the other details previously given, which were sufficiently explicit for all practical purposes. That such a change is embraced within the terms of a statute authorizing amendments " in matter of substance as well as in matter of form," is too clear to be elucidated by discussion. As to the time for making such an amendment,

the act declares it to be " any time before judgment on the lien claim." We have no more right to substitute for that definite period a term ending when the time for filing an original claim has lapsed, which would usually be months before the judgment, than we have to make a new statute.

But it is urged that when the change was made the lien had expired, and so to sanction the change is to create a new lien. This contention is the result of a partial view. The statute says (section 11) that the claim must be filed in the office of the county clerk within the year, and must contain a bill of particulars exhibiting the times, &c., and that if the claim be not filed in the manner or within the time aforesaid, or if the bill of particulars contain any willful or fraudulent misstatement of the matters directed to be inserted therein, the building or lands shall be free from all lien. According to this provision, if the claim be not filed in the manner directed, *i. e.,* in the office of the county clerk, or within the time directed, then the lien is gone; but if it be so filed the implication is that defective statements in the bill of particulars, or misstatements which are not willful or fraudulent, will not destroy the lien or render the claim a nullity. Although the claim in that condition might not warrant a judgment to enforce the lien, yet, by amendment under the act, it could be perfected. Such was the basis of the decision of this court in *Sewall* v. *Hawkins, sub nom. Wheeler* v. *Almond,* 17 *Vroom* 166.

Nor will any injustice probably flow from this interpretation of the act. In respects which the statute does not declare fatal to the lien, formal defects generally, and sometimes substantial defects, may be amended in furtherance of justice, even after the time limited for filing a claim. The power of deciding when such amendments can justly be made is entrusted to a justice of the Supreme Court, whose decision may, by proper proceedings, be reviewed in the court of last resort. The danger of injustice resulting from the possession of such power is less than that likely to result from lack of it.

The brick company also insists that the land described in

the claim is more extensive than the curtilage subject to the lien.

In *Derrickson* v. *Edwards*, 5 *Dutcher* 468, this court held that an objection of this nature could not be considered on writ of error; that the extent of the curtilage was a matter of fact to be settled in some manner at the trial. Since that decision the legislature has provided that it may be settled by an order in the suit made by a justice of the Supreme Court, on the application of any of the parties. *Gen. Stat., p.* 2066, § 15. Such an order was made in this cause at the instance of the brick company and appears upon the record. We see no reason for doubting the legal propriety of the curtilage defined in it.

The judgment of the Circuit Court should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, GARRISON, LIPPINCOTT, VAN SYCKEL, BARKALOW, BOGERT, DAYTON, HENDRICKSON, KRUEGER, NIXON. 12.

*For reversal*—None.